*In re* JUAN JOSÉ BERNAL SÁNCHEZ.

*Número:* TS-5435          *Resuelto:* 22 de junio de 2017

*Karla Z. Pacheco Álvarez,* subprocuradora general, y *Minnie H. Rodríguez López,* procuradora general auxiliar; *Cynthia Iglesias Quiñones,* abogada del peticionario.

## RESOLUCIÓN

Examinada la *Solicitud de reconsideración y segunda moción urgente de reinstalación al ejercicio de la abogacía* presentada por la Lcda. Cynthia Iglesias Quiñones en representación del Sr. Juan José Bernal Sánchez, *se provee "no ha lugar"*.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado Señor Martínez Torres hizo constar la expresión siguiente:

> Al igual que la Comisión de Reputación, no tengo duda de que el Sr. Juan José Bernal Sánchez está rehabilitado. No tengo base para cuestionar eso. No obstante, eso no es suficiente para reinstalar su licencia de abogado. Mi punto de vista es este: Igual que no dejaría que un pedófilo trabaje con niños aunque esté rehabilitado y haya cumplido su condena tampoco, dejaría a un narcotraficante tener una licencia de abogado, aunque esté rehabilitado y haya cumplido su condena. Creo que, como ciudadano, el señor Bernal Sánchez puede hacer muchas cosas, pero no debe dedicarse a trabajar en el sistema de justicia que una vez laceró profundamente.

La Jueza Presidenta Oronoz Rodríguez reconsideraría y emitió un voto particular disidente. El Juez Asociado Señor Kolthoff Caraballo reconsideraría. El Juez Asociado Señor Colón Pérez no intervino.

(Fdo.) Juan Ernesto Dávila Rivera
*Secretario del Tribunal Supremo*

— o —

Voto particular disidente emitido por la Jueza Presidenta
Oronoz Rodríguez.

> *Ante la ley hay un guardián. Un
> campesino se presenta frente a este
> guardián, y solicita que le permita
> entrar en la Ley. Pero el guardián
> contesta que por ahora no puede de-
> jarlo entrar. El hombre reflexiona y
> pregunta si más tarde lo dejarán
> entrar.*
> *—Tal vez— dice el centinela —pero
> no por ahora.*[1]

Juan José Bernal Sánchez, quien hace trece años fuera
suspendido de la profesión legal tras ser sentenciado en el
foro federal por delitos graves, comparece ante este Tribunal
y solicita ser reinstalado al ejercicio de la abogacía. Hizo
igual solicitud el 6 de diciembre de 2013, cuando este Tribu-
nal remitió su pedido a la Comisión de Reputación de Aspi-
rantes al Ejercicio de la Abogacía (Comisión de
Reputación).[2] Luego de las investigaciones correspondien-
tes, la Comisión de Reputación y la Oficina del Procurador
General comparecieron a este Tribunal y recomendaron que
se readmitiera al peticionario a la profesión. Fue entonces
que el señor Bernal Sánchez solicitó que, en virtud de esas
recomendaciones y de nuestra jurisprudencia previa, le re-
instaláramos al ejercicio de la abogacía. Denegamos su
solicitud.

El peticionario solicitó la reconsideración de nuestra
denegatoria.[3] El 8 de junio de 2017 una mayoría de este

---

[1] Franz Kafka, "Ante la ley", en: *http://ciudadseva.com/texto/ante-la-ley/*

[2] Resolución de 6 de diciembre de 2013 que refirió la Solicitud de Readmisión
al Ejercicio de la Abogacía a la Comisión de Reputación de Aspirantes al Ejercicio de
la Abogacía (Comisión de Reputación). La Juez Asociada Señora Rodríguez Rodrí-
guez y los Jueces Asociados Señores Martínez Torres, Rivera García y Feliberti Cin-
trón proveerían "no ha lugar".

[3] Resolución de 12 de mayo de 2017 que proveyó "no ha lugar" a la solicitud de
reinstalación luego de examinados los informes de la Comisión de Reputación y la
Oficina del Procurador General.

Tribunal proveyó "no ha lugar" a su pedido.[4] Bernal Sánchez comparece una vez más e implora a este Tribunal que, en consideración a los informes favorables de la Comisión de Reputación y la Oficina del Procurador General, así como el cumplimiento con los requisitos establecidos en *In re Figueroa Vivas*, 182 DPR 347 (2011), declaremos "con lugar" su reinstalación. Aduce también que el escueto "no ha lugar" provisto por este Tribunal dificulta la defensa de su solicitud, pues le deja desprovisto de las razones por las cuales este Foro rechaza los hallazgos y las recomendaciones ante nuestra consideración. Comparto la posición del peticionario y, dado que no hallo motivo para distanciarme de los informes rendidos en favor de su reinstalación, concedería su solicitud.

El señor Bernal Sánchez cometió unas faltas graves al conspirar para distribuir sustancias controladas y utilizar armas de fuego en la comisión de un delito vinculado al tráfico de sustancias controladas. *In re Bernal Sánchez*, 160 DPR 286 (2003). Nadie, ni siquiera el propio Bernal Sánchez, niega ese hecho ni sus consecuencias para su vida personal y profesional. Esas implicaciones ya fueron adjudicadas en el procedimiento penal que conllevó que Bernal Sánchez fuera sentenciado a 10 años de cárcel y que, en el procedimiento disciplinario, implicó también su suspensión indefinida de la profesión. Ahora, la interrogante que nos plantea el peticionario es si ese error grave debe dictar el resto de su vida y, cual "carimbo imborrable", supeditarle de por vida a "ser juzgado en función de su grave error".[5]

Situaciones de esta índole deben atenderse mediante un balance fino de intereses y criterios. Entre estos, debe estar presente el supuesto importante de la rehabilitación de la persona y su aptitud para desenvolverse en la libre comunidad y ejercer sus facultades ciudadanas. En cuanto a

---

[4] Resolución de 8 de junio de 2017. La Jueza Presidenta Oronoz Rodríguez, la Jueza Asociada Señora Pabón Charneco y el Juez Asociado Señor Kolthoff Caraballo reinstalarían al Sr. Juan José Bernal Sánchez al ejercicio de la abogacía.

[5] Solicitud de reconsideración y segunda moción urgente de reinstalación al ejercicio de la abogacía, pág. 5.

la abogacía se refiere, más allá de la rehabilitación personal resulta imprescindible la confianza que a este Tribunal le inspiren las cualidades éticas de la persona para desempeñar responsablemente una profesión tan revestida de interés público. Esto pues, en el fondo, la médula del proceso disciplinario no es penalizar a los abogados por sus actos, sino proteger a la comunidad de aquellos profesionales incapaces de desempeñarse con la dignidad y el honor debidos. *In re Barreto Ríos*, 157 DPR 352, 356 (2002).

Si bien una convicción penal tan seria como la que enfrentó el señor Bernal Sánchez nos llevó a concluir que éste no estaba a la altura moral requerida para ejercer la abogacía, solo en ciertos casos estaría inclinada a asumir esa postura irreversiblemente. Por el contrario, en un caso como éste, en el que el peticionario demostró que atravesó un proceso serio de crecimiento personal y cuenta actualmente con un aval amplio a su buena reputación, me veo conmovida a reconocer que merece una segunda oportunidad para integrarse a la comunidad jurídica.[6] Ante la prueba documental y oral vertida, así como las recomendaciones de la Comisión de Reputación y de la Oficina del Procurador General,[7] opino que lo contrario sería exhibir

[6] "[L]a cuestión a considerar no es si el peticionario ha sido castigado suficientemente, sino si en el momento de la solicitud goza de tal reputación que se justifica permitirle de nuevo que ejerza la profesión. En otras palabras, lo importante es la integridad moral del peticionario en la actualidad". *In re Figueroa Vivas*, 182 DPR 347, 355–356 (2011).

[7] Véase Informe de la Comisión de Reputación para el Ejercicio de la Abogacía, pág. 25, donde la Comisión de Reputación enumera todos los criterios adoptados en *In re Figueroa Vivas*, supra, para readmitir a un abogado y concluye que, "[a]nalizada la prueba del Peticionario, a juicio de esta Comisión, éste se ha rehabilitado y hoy día goza del carácter, reputación, integridad, honestidad y conocimientos que lo habilitan para ejercer la abogacía. Consecuentemente esta Comisión respetuosamente recomienda al Honorable Tribunal Supremo de Puerto Rico que admita al Peticionario al ejercicio de la profesión de la abogacía". Véase, también, Informe sobre Petición de Reinstalación, pág. 10, donde la Oficina del Procurador General concluye que "[a]l sopesar y evaluar todos los factores [...] mencionados, expresamos nuestra anuencia a que el señor Juan José Bernal Sánchez sea readmitido al ejercicio de la abogacía [...]". Entre la prueba vista por la Comisión de Reputación y presentada por el peticionario ante este Tribunal, obran unos cinco testimonios (Lcdo. José Miguel Sagardía Pérez, Lcdo. Rafael Torres Torres, Lcdo. José Antonio Ralat Pérez, Sr. José Almeida Medero y el propio peticionario) y más de veinte cartas de

un purismo judicial extremo, ajeno a esa falibilidad inherente a la condición humana y reticente a su capacidad igualmente inherente de enmendar los errores del pasado.

Por otro lado, me preocupa el silencio que guarda la mayoría al emitir su dictamen. Esto, considerando particularmente que mediante la Resolución del 6 de diciembre de 2013 el caso del peticionario fue referido a la Comisión de Reputación y los informes generados en ese proceso le fueron favorables. Es decir, una mayoría opta por distanciarse de las conclusiones de la Comisión sin comunicarle al peticionario las razones de ese distanciamiento. En estas circunstancias, no me parece que esa constituya la mejor práctica judicial, dado que el peticionario queda relegado a un proceso poco justo e insensible que podría, incluso, denominarse como "kafkiano":

*"Allí espera [el campesino] días y años. Intenta infinitas veces entrar [en la Ley] y fatiga al guardián con sus súplicas. Con frecuencia el guardián conversa brevemente con él, le hace preguntas sobre su país y sobre muchas otras cosas; pero son preguntas indiferentes, como las de los grandes señores, y, finalmente siempre le repite que no puede dejarlo entrar".*(⁸)

"Allí espera [el señor Bernal Sánchez] días y años. Intenta infinitas veces [su readmisión a la profesión] y fatiga al [Tribunal] con sus súplicas. Con frecuencia [la Curia] conversa brevemente con él [mediante resoluciones], le hace preguntas [en comisiones] sobre su [persona] y sobre muchas otras cosas; pero son preguntas indiferentes, como las de los grandes señores, [porque] finalmente siempre le [provee 'no ha lugar']".

---

abogados y familiares que acreditan las cualidades morales y profesionales de éste para ejercer la abogacía. Además, el peticionario acreditó estar enterado del desarrollo del Derecho puertorriqueño y haber tomado un curso de reválida en julio de 2013.

(⁸) Kafka, *op. cit.*

Sr. Juan José Bernal Sánchez: examiné sus mociones de reconsideración y opino que cuenta con las cualidades necesarias y la reputación adecuada para, hoy por hoy, ejercer cabalmente la profesión jurídica. Una vez más, sepa que —a mi entender— se le debe reinstalar al ejercicio de la abogacía cuanto antes.

Disiento respetuosamente de los distinguidos colegas de este Honorable Tribunal que sostienen lo contrario. Excusen, por favor, mi optimismo y mi fe en la naturaleza humana.