per curiam:
Mediante Resolución de 8 de septiembre de 1998, el Ledo. Héctor Cordero Vázquez, juez superior, remitió a la consideración de este Tribunal la conducta y el pro-ceder de los abogados que participaron en el caso Manuel Curras Figueroa v. Otto Curras Ortiz, Civil Núm. EAC920327 (611), con el propósito de que fuera evaluada de acuerdo con los cánones del Código de Etica Profesional, 4 L.P.R.A. Ap. IX. Luego de ordenarle al Procurador General *505 de Puerto Rico la realización de la correspondiente investigación, este Tribunal instruyó al Procurador General para que evaluara, además, las actuaciones del Ledo. Otto H. Curras Ortiz, quien intervenía en el referido caso en capacidad de parte y no como representante legal.([1])
El Procurador General sometió un primer informe que luego fue enmendado para atender diversos señalamientos del licenciado Curras Ortiz. En síntesis, el Procurador recomendó que las actuaciones del querellado fueran evaluadas de forma separada e independiente; sostuvo, además, que la investigación practicada evidenció que el licenciado Curras Ortiz faltó a su deber, como miembro de la profesión, de comportarse de forma sincera y honrada tanto ante los tribunales de instancia como ante los foros disciplinarios e, incluso, ante este Tribunal. Por dicha razón, el Procurador concluyó en la querella presentada que el licenciado Curras Ortiz incurrió en una conducta constitutiva de infracción a los Cánones 9, 12, 35 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. En su contestación a la querella enmendada, el abogado querellado aceptó que violó el Canon 35, ante, y que los demás cargos quedan subsumidos en las imputaciones del primero.
Este Tribunal designó al Ledo. Ángel F. Rossy García para que, en presencia de las partes y en calidad de comisionado especial, recibiera la prueba y nos rindiera un informe con sus determinaciones de hechos y recomendaciones de derecho. El Comisionado Especial presentó su informe; concluyó que la prueba presentada —a su juicio, prueba clara, robusta y convincente— demuestra que el abogado querellado incurrió en una conducta antiética violatoria de los Cánones 9, 35 y 37 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Resolvemos.
*506 I
En 1987 el Ledo. Otto H. Curras Ortiz compareció como peticionario ante el Tribunal Superior de Puerto Rico, Sala de Bayamón, en un procedimiento ex parte sobre declaratoria de herederos y obtuvo de ese foro una resolución mediante la cual se le declaraba iónico y universal heredero de su tío fallecido Miguel Ortiz Marrero. Posteriormente, con arreglo a tal determinación judicial, Curras Ortiz retiró e hizo suyos los fondos depositados en una cuenta bancaria propiedad del mencionado pariente.
Años más tarde, la viuda y las dos hijas del fenecido Miguel Ortiz Marrero, quienes residían en Nueva Jersey y Carolina del Sur, respectivamente, presentaron sendas quejas ante el Colegio de Abogados de Puerto Rico contra Curras Ortiz. Adujeron, en esencia, que ellas eran las legítimas herederas de Ortiz Marrero y que aunque no conocían personalmente a su primo Curras Ortiz, sabían quién era. Añadieron que Curras Ortiz conocía y sabía que su tío fallecido se había casado en Estados Unidos y que tenía dos hijas. Además, señalaron que Ortiz Marrero tenía otros hermanos y familiares en Puerto Rico. Por lo tanto, sostuvieron que la declaratoria de herederos se había obtenido a base de información falsa y que el aquí querellado había engañado al tribunal que la emitió.
Luego de la investigación correspondiente, el Colegio de Abogados presentó una querella ante este Tribunal contra el licenciado Curras Ortiz, en la cual le imputó que, a sabiendas, había presentado prueba falsa ante el tribunal de instancia con el propósito de defraudar a otros herederos de Miguel Ortiz Marrero y apropiarse así, ilícitamente, del caudal hereditario de éste. Se le imputó, entonces, que con su conducta y proceder violó los Cánones 5, 35 y 38 del Código de Etica Profesional, ante.
En su contestación a la referida querella, el licenciado Curras Ortiz alegó que a la fecha en que promovió la de *507 claratoria de herederos, que dio base a la querella, desconocía que su tío hubiese dejado descendientes legítimos. Admitió, no obstante, que a esa fecha existían otros parientes colaterales con derechos hereditarios con respecto al caudal en cuestión y que no le informó ese hecho al tribunal. Sin embargo, expuso que ello no había peijudicado a los otros parientes ya que éstos no tenían interés en la herencia en cuestión y que le habían dado consentimiento tácito para actuar como lo hizo. Acompañó, como prueba de lo anterior, una declaración jurada de una sobrina de Ortiz Marrero, quien aseveró que no conocía que su tío tuviese hijos y que no tenía interés en los fondos que dejó su tío.
Habiendo admitido el querellado que le mintió al foro judicial al exponer bajo juramento que él era el único heredero del causante, este Tribunal, descansando en las admisiones y alegaciones entonces hechas por el querellado, emitió opinión per curiam el 13 de agosto de 1996 en el caso In re Curras Ortiz [I], 141 D.P.R. 399 (1996). En ésta declaró al querellado incurso en infracción a los Cánones 35 y 38 del Código de Etica Profesional, ante. Como sanción disciplinaria le impuso una suspensión del ejercicio de la profesión y del notariado por el término de un año. Posteriormente, mediante Resolución emitida por este Tribunal el 26 de septiembre de 1997, Curras Ortiz fue reinstalado como abogado. In re Curras Ortiz [II], 143 D.P.R. 876 (1997).
Luego del referido que hizo el juez Cordero Vázquez a este Tribunal en 1998, el cual da lugar a la querella que hoy nos ocupa, afloró que la realidad era diferente a la entonces presentada por el licenciado Curras Ortiz unos años antes; es decir, que las afirmaciones hechas por el querellado para defenderse en el procedimiento disciplinario anterior no se ajustaban a la verdad.
En primer lugar, hacemos referencia al trámite procesal habido en el caso Sucesión Aponte Palma v. Sucesión Nemesia Curras, Civil Núm. EAC-93-0061, sobre una acción presentada el 5 de marzo de 1993, es decir, dos años antes de la *508 presentación de la primera querella. Entre los demandados y reconvencionistas en dicho procedimiento se encontraba el querellado y su hermana Madreselva Curras Ortiz. El licenciado Curras Ortiz aceptó en la contestación a la demanda que Madreselva era su hermana y, además, que era incapacitada y que el aquí querellado era su tutor. Más adelante, expuso el querellado en la alegación primera de la reconvención que “los demandados y reconvencionistas Otto y Madreselva Curras Ortiz han sido declarados, entre otros, herederos únicos y universales de la causante tía suya Nemesia”, ello mediante resolución dictada por el Tribunal de Distrito de Caguas, Civil Núm. CD-93-126. Ahora bien, resulta significativo que en la declaratoria de herederos por él promovida de su tía Nemesia Curras Figueroa, suscrita bajo juramento el 17 de diciembre de 1992 y presentada el 19 de enero de 1993, excluyó a su hermana incapacitada Madreselva; ésta también fue excluida en la resolución que emitió el Tribunal conforme a lo peticionado el 3 de febrero de 1993.
El licenciado Curras Ortiz no trajo a la atención de este Tribunal en el primer proceso disciplinario la mencionada información pertinente y material a la primera querella instada contra él. Contrario a la realidad y constándole que en la declaratoria de herederos promovida por él, que dio base a la querella, no sólo excluyó a sus parientes colaterales sino a su propia hermana incapacitada, le ocultó tal hecho a este Tribunal. Dicha acción de su parte evidentemente constituía un agravante a la falta ética en que incurrió y que fue objeto de consideración por este Tribunal. La gravedad de tal proceder se manifiesta cuando alega ante este Tribunal que sus parientes colaterales no se habían perjudicado de su actuación porque no tenían interés en la herencia y le habían dado el consentimiento tácito para actuar como lo hizo. Para ese momento, le constaba que su hermana incapacitada estaba impedida de consentir a tal actuación de su parte, por lo que tal información *509 suministrada por él era también incompleta, imprecisa y falsa.([2])
De otra parte, el 3 de abril de 1989 el licenciado Curras Ortiz promovió una petición sobre declaratoria de herederos de sus padres Margarita Ortiz Marrero y Rafael Curras Figueroa, caso Civil Núm. KJV-89-322(808), ante la Sala de San Juan del antiguo Tribunal Superior. Considerada como fue dicha petición, el tribunal emitió una resolución declarándolo único y universal heredero de dichos causantes. Se excluyó así, de la petición y posterior resolución, a su hermana incapacitada Madreselva Curras Ortiz.([3])
El 17 de diciembre de 1992, sin haber solicitado enmienda alguna a la resolución de declaratoria de herederos de sus padres,([4]) promovió una nueva declaratoria de herederos de su tía la Sra. Nemesia Curras Figueroa, Caso Civil Núm. CD-93-126. En ésta, el querellado hizo exclusión de su hermana incapacitada en la lista de herederos con *510 derecho a participar en la herencia. Considerada como fue dicha petición, y la prueba complementaria incluida con ella, el tribunal emitió una resolución declarando al aquí querellado heredero de la señora Curras Figueroa, en unión a varios tíos y primos de éste. En dicha resolución, al igual que en las anteriores promovidas por él, se excluyó a su hermana incapacitada Madreselva. ([5])
El 26 de agosto de 1992 el licenciado Curras Ortiz presentó sus planillas de contribución sobre ingresos de 1987 a 1990. En éstas reclamó a Madreselva Curras Ortiz como su hermana dependiente incapacitada. No obstante, en dicha fecha no solicitó enmienda alguna a las resoluciones sobre declaratoria de herederos promovidas por él y que excluían a Madreselva.([6])
Continuando el querellado con su patrón de ocultar información pertinente, al recibir una orden de este Tribunal para que entregara copia de sus planillas de contribución sobre ingresos de 1987 a 1990, se limitó a suministrar la primera página de las planillas y a alegar que como el Procurador General no había podido reproducir evidencia clara, robusta y convincente de que él conocía el vínculo filial por adopción no le veía pertinencia a que se entregara copia de las planillas. Posteriormente, alegó que lo entregado era todo lo que tenía y que de todos modos al Procurador no le incumbían sus finanzas.
Por último, en el proceso sobre Nombramiento de Administrador Judicial que atendía el juez Cordero Vázquez, quien refirió la queja que dio lugar a la presente investigación, tanto los abogados de las partes como el querellado en particular sabían que había una persona incapacitada, Madreselva, la hermana del aquí querellado, sin embargo, se *511 autorizaron comisiones, pagos y liquidaciones parciales de bienes hereditarios sin advertir al tribunal sobre tal situación.
II
 “El día en que un abogado presta juramento ante el Tribunal Supremo le es concedido un gran privilegio: el de poder ejercer una profesión, honrosa por demás, que tiene una rica y extraordinaria tradición y que desempeña un importante papel en nuestra sociedad.” In re Busó Aboy, 166 D.P.R. 49, 61 (2005); In re Quintero Alfaro, 161 D.P.R. Ap. (2004), Caso Núm. TS-3034, per curiam de 9 de febrero de 2004, pág. 2. “Al juramentar una persona como abogado, éste se convierte en funcionario del Tribunal y ministro ordenado de la justicia y se compromete a desempeñar su alto ministerio con la mayor y más excelsa competencia, compromiso e integridad.” (Énfasis suplido.) íd. Ramos Acevedo v. Tribunal Superior, 133 D.P.R. 599 (1993). Ahora bien, este privilegio conlleva, entre otras, la responsabilidad de desempeñar los deberes que como abogado del Estado Libre Asociado de Puerto Rico le imponen la ley y el Código de Ética Profesional. Id.
El Canon 35 del Código de Ética Profesional, ante, impone al abogado un deber de sinceridad y honradez erga omnes. In re Franco Rivera y Masini Soler, 134 D.P.R. 823 (1993). Esto significa que este deber lo tiene el abogado frente a todos, tanto ante sus representados como en las relaciones con sus pares y, por supuesto, ante los tribunales. In re Astacio Caraballo, 149 D.P.R. 790 (2000). Los abogados han de conducirse siempre con integridad ante los foros judiciales. In re Curras Ortiz [I], ante. El abogado no puede proveer al tribunal información falsa o que no se ajuste a la verdad, ni puede ocultarle información certera que deba ser revelada. Véase In re Filardi Guzmán, 144 D.P.R. 710 (1998). La conducta de todo abogado ante *512 los tribunales debe caracterizarse por la sinceridad y honradez, y no actúa profesionalmente el abogado que no se ajusta a la verdad de los hechos al presentar las causas. In re Peña Clós, 135 D.P.R. 590 (1994).
No es sincero ni honrado utilizar medios que sean incompatibles con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Canon 35 del Código de Ética Profesional, ante. Véase, además, In re Silvagnoli Collazo, 154 D.P.R. 533 (2001). La declaración bajo juramento de hechos falsos constituye una violación al Canon 35 de Ética Profesional, ante. In re Astacio Caraballo, ante. Ello porque “[e]l compromiso de un abogado con la verdad debe ser siempre incondicional”. In re Montañez Miranda, 157 D.P.R. 275, 284 (2002). “Más que un ideal irrealizable, la verdad es atributo inseparable del ser abogado y sin ella la profesión jurídica no podría justificar su existencia.” Id., pág. 281. Véase In re Sepúlveda Girón, 155 D.P.R. 345 (2001).
Debemos recordar, por último, que se infringe el deber impuesto por el citado Canon 35 con el simple hecho objetivo de faltar a la verdad, lo cual supone una conducta lesiva a las instituciones de justicia, independientemente de los motivos para la falsedad. In re Belk, Serapión, 148 D.P.R. 685 (1999). Para incurrir en esta falta, no es necesario que se haya faltado a la verdad deliberadamente o de mala fe, o con la intención de defraudar o engañar. In re Martínez, Odell I, 148 D.P.R. 49 (1999). No obstante, estas circunstancias son importantes, junto con otras, al determinar la sanción disciplinaria que ha de imponerse al abogado. In re López de Victoria Brás, 135 D.P.R. 688 (1994).
Finalmente, el Canon 38 del Código de Ética Profesional, ante, exige a todo abogado esforzarse al máximo de su capacidad en la exaltación del honor y la dignidad de su profesión, aunque hacerlo conlleve sacrificios personales, y debe evitar hasta la apariencia de conducta profesio *513 nal impropia. Este principio es una convocatoria a la profesión legal a tener un desempeño que no sólo debe ceñirse a las pautas éticas mínimas, sino que debe ser reflejo del más alto calibre de excelencia humana. In re Olivera Mariani, 173 D.P.R. 498 (2008); In re Nogueras Cartagena, 150 D.P.R. 667 (2000). Estos deberes tienen que ser cumplidos aunque hacerlo conlleve sacrificios personales. In re Belk, Serapión, ante. Un abogado no puede acudir al sistema de administración de la justicia si al hacerlo, y con el fin de adelantar sus propios intereses, falta a la verdad. In re Filardi Guzmán, ante.
Todo abogado es un espejo en el cual se refleja la imagen de la profesión. In re Santiago Ríos, 172 D.P.R. 802 (2008). Por consiguiente, todo despliegue de conducta que atente contra este principio pone en entredicho las valiosas ejecutorias y beneficios mayores a los cuales esta clase profesional ha contribuido históricamente. In re Díaz García, 104 D.P.R. 604 (1976).
Es, pues, necesario que los miembros de la clase togada sean conscientes de que la práctica de la abogacía conlleva una seria y delicada función ciudadana porque representa servicio, ética y ejemplo. In re Roldos Matos, 161 D.P.R. 373 (2004); Ramos Acevedo v. Tribunal Superior, ante. Estos son principios sobre los cuales se foija un estilo de vida y no deben ser menoscabados por el quehacer diario o por el ambiente social y valorativo dentro y alrededor del cual se desenvuelven los abogados. In re Sánchez Rodríguez, 123 D.P.R. 876 (1989).
III
El Procurador General sostiene que la conducta y el pro-ceder del licenciado Curras Ortiz violan los Cánones 9, 12, 35 y 38 del Código de Ética Profesional, ante. Fundamenta dicha determinación, en primer lugar, en que durante el anterior proceso disciplinario que culminó en la opinión In *514 re Curras Ortiz [I], ante, el querellado faltó a la verdad al expresar ante este Tribunal que había cometido un “error por desconocimiento de ciertos familiares” en la confección de la petición de la declaratoria de herederos y que otros parientes habían “consentido tácitamente” a que él reclamara la herencia. Para el 14 de junio de 1996, momento cuando el licenciado Curras Ortiz comparece ante este Tribunal para excusar sus actuaciones, ciertamente conocía la existencia de su hermana Madreselva y de su vínculo legal por adopción, ya que, según el propio letrado, desde principios de 1994 se enteró de ello. Además, el querellado sabía que su hermana era totalmente incapacitada, por lo que no podía consentir.
A tales imputaciones del Procurador General, el licenciado Curras Ortiz replica que el hecho de no haberse referido a Madreselva, cuando pendía la anterior querella, se debió a que se estaba refiriendo al 1987, fecha cuando juramentó la declaratoria de herederos, y que para ese entonces no conocía su relación de parentesco por razón de adopción. Añade que tampoco tenía documento legal u oficial que acreditara dicho vínculo para incluirla en la petición. Aduce que no tenía tal conocimiento porque fueron sus padres quienes tenían total y absoluto control sobre todo lo relacionado a Madreselva, incluyendo su ingreso al Instituto, su educación y manutención. Afirma que para 1987 su padre aún vivía y era él quien controlaba todo lo relacionado a Madreselva. Por último, arguye que siempre consideró a Madreselva una hermana de crianza.
Por otro lado, el Procurador General asevera que el querellado faltó a la verdad al juramentar la petición sobre declaratoria de herederos de sus padres, en la cual se declaraba único y universal heredero, lo que no era cierto. En su defensa, el licenciado Curras Ortiz aduce que es para 1994 que conoce oficialmente la relación de parentesco entre él y Madreselva. En consecuencia, para 1989, cuando juramentó la susodicha petición, no conocía del vínculo por adopción. Añade que cuando se enteró, procedió de inme *515 diato a enmendar la resolución que lo declaraba único y universal heredero de sus padres.
El Procurador General, a su vez, le imputa al querellado haber mentido el 17 de diciembre de 1992, en la petición de declaratoria de herederos de su tía Nemesia Curras Figueroa. Ello porque, nuevamente, excluyó a Madreselva de ésta. El licenciado Curras Ortiz alega que no la incluyó por razones de necesidad y urgencia, motivado por el hecho de que los herederos de quien fuera el esposo de la causante estaban retirando indebidamente grandes sumas de dinero de la herencia. Por dicha razón, se presentó la petición de modo prematuro e incompleto, pero, que tan pronto conoció su vínculo con Madreselva, al localizar el correspondiente certificado de nacimiento, enmendó la solicitud e incluyó a su hermana en ésta. Incluso, el querellado alega que fue en dicho momento cuando se enteró de la adopción de Madreselva.
Sin embargo, al enfrentarse a la contestación de la demanda en el caso EAC-1993-0061, suscrita el 21 de abril de 1993, en la cual el querellado admitió que Madreselva era su hermana y que era incapacitada, el licenciado Curras Ortiz replica que lo hizo asumiendo que la incapaz era su hermana de crianza. Igual contestación nos ofrece respecto a las afirmaciones hechas en las declaraciones juradas para toma de fotografías y para servicios médicos que suscribió en 1991, admitiendo que Madreselva era su hermana con sus mismos apellidos.
Las explicaciones dadas por el querellado a las imputaciones del Procurador General no convencieron ni a éste último ni al Comisionado Especial, quienes concluyeron que, en efecto, al momento de defenderse de los procedimientos disciplinarios ante la Comisión del Colegio de Abogados y ante este Foro, al igual que al presentar la petición de declaratoria de herederos de Nemesia Curras Figueroa, el licenciado Curras Ortiz conocía el vínculo legal existente entre él y Madreselva en virtud de la adopción antes reseñada.
No albergamos duda alguna de que, en la tramitación *516 de la queja del presente caso, el licenciado Curras Ortiz brindó al Procurador General y a este Tribunal información falsa o imprecisa con la intención de desviar el curso de la investigación y evadir las consecuencias de sus actos dentro de este procedimiento disciplinario. La prueba a esos efectos es robusta y convincente.
Es norma reiterada que, aunque este Tribunal no está obligado a aceptar el informe del Comisionado Especial, de ordinario sostendremos las determinaciones de hecho que realice, salvo que se demuestre prejuicio, parcialidad o error manifiesto. In re Morell, Alcover, 158 D.P.R. 791 (2003). Esta norma de deferencia aplica, principalmente, cuando el Comisionado Especial tiene la oportunidad de escuchar a los testigos, porque se encuentra en mejor posición para aquilatar dicha prueba. En el presente caso el licenciado Rossy García escuchó y vio testificar, entre otros, al querellado y concluyó que éste faltó al deber de comportarse de forma sincera y honrada, tanto en su vida privada como en el desempeño de su profesión. En consecuencia, y en ausencia de prejuicio, parcialidad y error manifiesto, consideramos que el licenciado Curras Ortiz violentó los cánones del Código de Etica Profesional 35 y 38, ante. El querellado, también, infringió el Canon 35 al negarse a cumplir los requerimientos de este Tribunal y del Procurador General para impedir que se descubriera la magnitud de sus desvíos éticos.
Además, el comportamiento del querellado quebranta el Canon 9 del Código de Etica Profesional, ante, que obliga al abogado a observar una conducta que se caracterice por el mayor respeto hacia los tribunales. Es definitivamente un atentado a la administración de la justicia engañar y mentirle a los tribunales con el propósito de adelantar intereses personales. Ello, sin lugar a dudas, es una falta grave.
Por último, entendemos que no surge del expediente prueba clara, robusta y convincente que demuestre que el letrado sobrecargó innecesariamente los foros de instancia *517 con múltiples procedimientos y litigación excesiva. Por lo tanto, no se evidenció que el querellado hubiese infringido el Canon 12 del Código de Etica Profesional, ante, que impone el deber de ser conciso y exacto en el trámite y presentación de causas.
IV
Tomando en consideración los hechos antes expuestos y en virtud de nuestro poder inherente para regular y disciplinar a los miembros de la profesión, concluimos que Otto H. Curras Ortiz violó las disposiciones de los Cánones 9, 35 y 38 del Código de Etica Profesional, ante. Nos engañó una vez y continuó haciéndolo. En atención al patrón de conducta antiética y repetitiva desplegada por el letrado, entendemos que ello amerita la imposición de una suspensión indefinida del ejercicio de la abogacía.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez no intervino.

(1) El Ledo. Otto H. Curras Ortiz fue admitido al ejercicio de la abogacía en Puerto Rico el 6 de noviembre de 1980.

(2) Madreselva Curras Ortiz nació el 3 de abril de 1959, quedando bajo custodia de los padres del querellado desde que era recién nacida. En palabras del querellado durante su testimonio, conoce de la existencia de Madreselva desde que su madre la llevó a su casa de pequeñita. Entonces, sus padres iniciaron un proceso de adopción en 1959 que terminó en 1967.
En lo que respecta al estado mental de Madreselva y según atestado en el proceso por la Sra. Marta Ferrer, Trabajadora Social del Instituto Pedagógico, ésta tiene un retardo mental profundo, no habla y es dependiente para todas sus necesidades en el diario vivir, lo que incluye alimentación y medicamentos. Por su condición requiere supervisión continua las 24 horas del día.
Después de la muerte de los padres del querellado, Madreselva quedó bajo la custodia y cuidado del querellado por dos años, cuando fue ingresada en el Instituto Psicopedagógico a causa de su condición de salud. El licenciado Curras Ortiz es el tutor de la incapaz, provee para que se atiendan sus necesidades personales y la visita con regularidad. Según lo atestado por la trabajadora social, es cariñoso con ella, se comporta como un hermano y es el único familiar que se le ha acercado con relación a Madreselva.

(3) El 13 de noviembre de 1991 el licenciado Curras Ortiz otorgó una declaración jurada ante notario, en la cual reconoció a Madreselva como su hermana con sus mismos apellidos. Indicó en el escrito que fue declarado tutor y que es la persona encargada del bienestar de Madreselva por designación del Seguro Social federal y autorizó a que se le brindara atención médica de ser necesario. Previo a ello, había suscrito el 21 de junio de 1991 una autorización, en capacidad de hermano de Madreselva con sus mismos apellidos, para la prestación de servicios médicos y psiquiátricos, así como una autorización para la toma de fotografías.

(4) Eventualmente, el querellado procedió a añadir a Madreselva como heredera de sus padres mediante la presentación de una nueva declaratoria de herederos en el caso Otto Curras Ortiz, Peticionario Ex Parte, Civil Núm. 1994-1879.

(5) La solicitud de enmienda de la declaratoria de herederos en el caso de Nemesia Curras Figueroa para incluir a Madreselva entre los herederos de la referida causante, fue promovida por Virginia Curras Carrasquillo el 5 de julio de 1994.

(6) También la reclamó como hermana incapacitada dependiente en sus planillas de contribución sobre ingresos de 1991 a 2004.